## Choma Estate

*John Dano*, for accountant.

SIROTNAK, P. J., February 13, 1963.—. . . In the petition for distribution presented in behalf of the accountant at the audit, it is noted that the sole legatee

of testatrix, Anna Tkatch, daughter, is a resident of Terpelovka, Tarnapol Obl., Pidvolochnic Rayon, U. S. S. R. Hearings were held, pursuant to the request of counsel for the accountant, to justify distribution under the will of the testatrix to a nonresident beneficiary.

The matter before the court resolves itself into two issues: first, the identification of the legatee, and second, whether the legatee would have full use, enjoyment or control of her distributive share.

To justify the distribution requested by counsel for the estate in his petition for distribution, the executor, Christopher Kotzeruba, was called to testify. In substance, he testified that he knew decedent for two or three years and had assisted her in obtaining a passport to the old country, which she had received about two weeks before her death; that he was requested on the day before her death to send any money she had to her daughter; that he had sent money to his own sister for the past four years and had received acknowledgments of the receipt of the money; and that full value therefor was obtained by the recipient.

Mrs. Catherine Zinkevich testified that she knew decedent from the old country; that she had personal knowledge that decedent had sent packages to her daughter; that decedent never sent money, but only packages; that decedent told her the money in the banks was to be spent for a grave marker and the balance thereof was to be forwarded to her daughter; and that she (the witness) had sent packages to decedent's daughter, at decedent's request. She produced a copy of a list of articles and a postal receipt evidencing a shipment of a package through the Package Express and Travel Agency, Inc.

Metro Olinsky testified in behalf of the accountant that he was a first cousin of decedent; that he was aware of the fact that decedent had sent packages to

her daughter; and that decedent had requested that a marker be placed on her grave and the rest of her money was to go to her daughter.

Peter Ladutko, who resides in Mayfield, testified in behalf of the accountant. His testimony can be epitomized as a recitation of his personal experiences in his visitations to the U. S. S. R. in 1958 and 1960, and in sending substantial sums of money to a brother and a sister in the U. S. S. R. He said they received every cent forwarded, as well as full value therefor; that all the commodities sent through the agency designated by Soviet Russia were received without any trouble; that money forwarded would be received by his kin without the knowledge of the authorities; that the money is received and exchanged; and that when the money is sent through the bank, the banking authorities notify the person entitled thereto and, upon proper identification, payment is made to him.

Finally Mrs. Ann Powell, who testified in behalf of the accountant, said in substance that she is the daughter of Metro Olinsky, a previous witness and a cousin of decedent; that she corresponded with the daughter of decedent; that she was aware of the fact that decedent had sent packages to her daughter; that the witness corresponded with the daughter of decedent; that she received a letter from the daughter of decedent on October 21, 1962, which she translated; and that she sent a package to the daughter of decedent about a month ago.

The burden of proof to establish a claim is upon claimant: Link's Estate (No. 1), 319 Pa. 513. While kin of decedent testified to the relationship of the claimant to decedent, no documentary evidence of pedigree was forthcoming with any form of authentication; and even though it might be conceded that claimant would be able to prove her relationship to decedent, the court is not impressed with the evidence submitted in an

effort to prove that claimant would receive the actual benefit, use or enjoyment of the money if it were awarded to her. That the witnesses in behalf of the accountant indicate that they are satisfied with the results obtained in their personal remittances of funds to their own kin is in no way proof to the court's satisfaction that the maximum benefit would enure to the distributee in the instant case. The court senses a serious responsibility, and so assumes it, to be absolutely convinced that this end result will be achieved.

Serious attempts have been made in other jurisdictions to obtain funds for distributees, as in the instant case, wherein experts on U. S. S. R. affairs were called to testify, and the courts were not impressed. See Wolders Estate, 28 D. & C. 2d 51; Zupko Estate, 15 D. & C. 2d 442.

The court takes judicial notice, upon being so advised after due inquiry to the Secretary of Treasury of the United States, that section 211.3(a) of the Department's Circular No. 655, dated March 21, 1941, as amended and currently in effect, prohibits remittances to the Union of Soviet Socialist Republics, as there is not a reasonable assurance that a payee will actually receive checks or warrants drawn against funds of the United States, or agencies or instrumentalities thereof, and be able to negotiate the same for full value.

While it was testified in behalf of the accountant that moneys forwarded were received without question, it is difficult to attach any value to such proof, as concern for a relative's plight may outweigh any consideration of the quantum of benefit to be gleaned from any such remittance.

The court is of the opinion, even though testatrix made her daughter the object of her bounty, that she did not intend any unjust enrichment of the government of the country wherein her daughter resides by making any remittance to her subject to harsh reg-

ulatory measures to the detriment of her daughter, her beneficiary.

The Act of February 23, 1956, P. L. (1955) 1084, the so-called Iron Curtain Act, provides:

"Section 737. Award to Nonresident Beneficiary.— When the court believes that a beneficiary who is not a resident of the United States, its territories or possessions, would not have the actual use, enjoyment or control of the money or other property distributable to him, the court shall have the power and authority to direct the personal representative (1) to make only such payments to the beneficiary as the court directs, or (2) to convert the distributive share into cash and pay it through the Department of Revenue into the State Treasury without escheat to be held for the benefit of such beneficiary . . ."

Even to allow small remittances of money or merchandise would not, in the court's opinion, prove feasible, in view of the record and the decided cases. Many tiny rivulets of remittances directed to a common outlet could result in a turbulent stream of benefits flowing to the national economy of the Iron Curtain country, to the detriment of those who might be entitled to the benevolence of their kin in the United States, and even to the disadvantage of the United States itself, whose philosophy of government is diametrically opposed to that of the country wherein reside the beneficiaries of the bounty of their kin in the United States. The court is not convinced that even permitting the transmission of such small remittances of money or merchandise would assure the beneficiaries thereof of the use, enjoyment or control of any such remittances. See Zupko Estate, supra.

Distribution is therefore awarded as follows: To the Commonwealth of Pennsylvania for payment into the State treasury, through the Department of Revenue, without escheat, pursuant to section 1314 of the Fiscal

Code of April 9, 1929, P. L. 343. The said award will be made, however, without prejudice to the rights of Anna Tkatch, in a future proceeding, to establish her claim that she is decedent's daughter and to prove her identity in accordance with the requirements of our law, and to prove further that she will have the use, enjoyment or control of any distribution awarded to her.